UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERI MARTINEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MURPHY OIL USA, INC. )<br>)<br>Defendant. ) | Case No. 24-CV-377-CDL |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment (Doc. 19) (the "Motion") by Defendant Murphy Oil USA, Inc. By consent of the parties (Doc. 11 at 3), the undersigned is authorized to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**I.    Background**

In this diversity case, Plaintiff alleges that she slipped and fell in spilled fuel while visiting a Murphy USA gasoline station in Miami, Oklahoma. (Doc. 2-1 at 1–2). Plaintiff fell while returning to her vehicle in order to dispense fuel for which she had prepaid the cashier. (Doc. 19 at 3); (Doc. 21 at 2). As a result of the fall, Plaintiff claims to have sustained injuries "including but not limited to her head and right leg." (Doc. 2-1 at 2). After Plaintiff's fall, an employee of Defendant was on the scene within minutes to apply an absorbent material or "spill eater" to the area where the spilled fuel was present. (*Id.*). Plaintiff subsequently brought claims of negligence against Defendant in state court, seeking actual and punitive damages (*Id*. at 4, 6–7), and Defendant timely removed the action to this Court. (Doc. 2).

## II. Legal Standards

To succeed in moving for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries the initial burden to show the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.'" *Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In doing so, "[t]he nonmovant must show more than a 'scintilla of evidence' in support of its position, instead, the evidence must be sufficient for a jury to reasonably find for the nonmovant." *Id.* (quoting *Anderson*, 477 U.S. at 252). When ruling on the motion, the Court should view the evidence "in the light most favorable to the non-moving party." *Isaacson v. Isaacson*, 479 Fed. Appx. 162, 165 (10th Cir. 2012) (quoting *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 (10th Cir. 2011)).

## III. Discussion

Oklahoma law governs Plaintiff's negligence claims. *See Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Under Oklahoma law, a Plaintiff claiming negligence must show "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by such breach." *Armer v. Golden Corral Corp.*, No. Civ-12-1351-M, 2013 WL 4500671, at *2 (W.D. Okla. Aug. 21, 2013) (citing *Phelps v. Hotel Mgmt., Inc.*, 925 P.2d 891, 893 (Okla. 1996)). The mere fact that an injury occurred on a defendant's premises is not conclusive of the defendant's negligence: a

business is not "an insurer of the safety of others and is not required to prevent all injury occurring on the property." *Taylor v. Hynson*, 856 P.2d 278, 281 (Okla. 1993).

The undisputed material facts demonstrate that Defendant owed a duty to Plaintiff as an invitee of the Defendant's business, as the purpose of Plaintiff's visit was to purchase fuel. (Doc. 19 at 3); (Doc. 21 at 2); *see McKinney v. Harrington*, 855 P.2d 602, 604 (Okla. 1993) (citations omitted) ("Where there is a common interest or mutual advantage an invitation is inferred. . . and thus the term 'business invitee' is frequently used."). Thus, Defendant owed Plaintiff "a duty to exercise ordinary care to keep its premises in a reasonably safe condition for use of its invitees and a duty to warn invitees of dangerous conditions upon premises that are either known or should reasonably be known by the owner." *Phelps*, 925 P.2d at 893 (citing *Taylor*, 856 P.2d at 281). As a general rule, this duty does not extend to "dangers which are open and obvious, and which would be discovered by the invitee in the exercise of ordinary care." *Id*. (citing *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 775 (Okla. 1988)).

For purposes of its Motion, Defendant does not dispute that a fuel spill was present in the area where Plaintiff fell. Rather, Defendant contends there is no evidence in the record that it had actual or constructive knowledge of any spilled fuel before Plaintiff's injury. "An invitor cannot be held responsible unless it be shown that he/she had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its presence." *Taylor*, 856 P.2d at 281. Thus, a defendant only breaches its duty of ordinary care if it had actual or constructive knowledge of the allegedly dangerous condition that caused a plaintiff's injuries. *See Roberson v. Wal-Mart,*

3

*Inc.*, No. CIV-21-657, 2022 WL 2874715, at *3 (W.D. Okla. July 21, 2022); *Lingerfelt v. Winn-Dixie Texas, Inc.*, 645 P.2d 485, 488 (Okla. 1982).

Constructive knowledge can be shown with "evidence tending to establish that defendants negligently inspected the premises or negligently failed to inspect the premises." *See Kassick v. Spicer*, 490 P.2d 251, 254 (Okla. 1971). "The pivot of liability . . . is timely notice of danger." *Rogers v. Hennessee*, 602 P.2d 1033, 1035 (Okla. 1979). Alternatively, Oklahoma law recognizes an exception to the traditional requirement of actual or constructive knowledge where the plaintiff can show "circumstances were such as to create the reasonable probability that a dangerous condition. . . would occur." *Lingerfelt*, 645 P.2d at 488; *see also Martin v. Wal-Mart Stores, Inc.*, 956 F.2d 278 (Table), 1992 WL 19835, at *2 (10th Cir. 1992) (unpublished) (citing *White v. Wynn*, 708 P.2d 1126, 1129 (Okla. 1985); *Lingerfelt*, 645 P.2d at 488). This exception applies where the invitor creates a "foreseeable, unreasonable risk" that would give rise to the dangerous condition. *Lingerfelt*, 645 P.2d at 489.

Video evidence from the scene shows Plaintiff parked at a gas pump, with the driver side facing the pump, and walking around the rear of the vehicle toward the cashier kiosk. (Doc. 19-1 at 3 (depicting a flash drive containing the gas station footage from the day of the alleged accident labeled "Attachment A to Exhibit 1")). After paying cash for her fuel purchase, Plaintiff returned to her vehicle. *Id*. Plaintiff's deposition testimony established that she did not observe any condition that needed attention either while walking away from or back to her vehicle, did not smell anything that needed attention, and did not feel any liquid on her shoes before she fell. (Doc. 19-3 at 14, 17, 21). The video footage does

not show Plaintiff's fall. (Doc. 19-1 at 3).

Plaintiff does not assert or point to any evidence that Defendant had actual knowledge of the spill before her fall. She must accordingly show there is a genuine dispute as to whether Defendant had constructive knowledge of the spill or whether Defendant unreasonably created the dangerous condition. She has not provided any such evidence.

Here, the undisputed facts are that "Ms. Martinez did not observe any condition that needed attention. . . . She did not see or smell anything. . . and did not feel any liquid on her shoes before she fell." (Doc. 19 at 3). Moreover, Plaintiff does not dispute that "[i]f the alleged condition could have been perceived by Murphy or its employees, so too could any other patron, including Plaintiff." (Doc. 19 at 9). Thus, her constructive notice argument fails: the record lacks evidence tending to show that the spilled fuel was a visible dangerous condition, much less one with a "deceptively innocent appearance of safety, cloaking a reality of danger." *Sholer v. ERC Mgmt. Grp., LLC*, 256 P.3d 38, 43 (Okla. 2011). The only visual evidence of the accident site prior to Plaintiff's fall, the gas station camera footage, does not depict spilled fuel where the fall occurred, or if it does, the spill is indiscernible. (Doc. 19-1 at 3).

The only evidence that speaks to the spill's conspicuousness is Plaintiff's deposition testimony, and that testimony tends to show that the spill was so inconspicuous as to evade Plaintiff's detection. (Doc. 19-3 at 14, 17, 21). Absent some evidence establishing that Defendant knew or had reason to know that there was a spill—a spill Plaintiff herself could not see when right next to it—there is no genuine issue of material fact that Defendant lacked the requisite actual or constructive knowledge to be held liable for negligence.

5

Without evidence to show Defendant either had the requisite knowledge of or had created the unreasonable risk of the fuel spill occurring, Defendant is entitled to summary judgment because there is no genuine issue of material fact in dispute that would permit a reasonable jury to conclude that Defendant had a duty to warn of or remedy the fuel spill.

Plaintiff attempts to impute notice and thus liability based on the mere availability of the spill eater that one of Defendant's employees used on the spill after learning of Plaintiff's reported fall. (*See* Doc. 21 at 21 ("[T]he equipment and material required to neutralize the fuel spill would not have been at the site.")). The mere availability of spill eater and its use after Defendant became aware of the spill following Plaintiff's fall does not support any inference that Defendant was aware of the spill *before* Plaintiff's fall or that Defendant knew or should have known of the particular spill with time to remedy or warn of it. *See Rogers*, 602 P.2d at 1035 ("What the [plaintiff] hopes is that we will infer lack of due care from the proof of occasional spills. This we cannot do because there was [n]o showing of negligence in using premises known to be unfit or in failing to make inspections adequate under the circumstances. A contrary ruling would in effect amount to imposition of liability on a no-fault basis.").

That Defendant had materials in preparation for any future spills does not establish that Defendant had actual or constructive knowledge of the particular spill at issue here. General awareness of the *potential* for a spill, without more, does not give rise to a duty to remedy or warn its invitees of a specific spill of which Defendant had no actual or constructive notice. A plaintiff must show that the invitor knew of or failed to reasonably inspect the premises for the specific dangerous condition, or in the alternative, that "the

operating methods of an invitor are such that dangerous conditions, such as spills by patrons, are recurring or easy to anticipate." *Martin*, 1992 WL 19835, at *2 (citing *White*, 708 P.2d at 1129; *Lingerfelt*, 645 P.2d at 488).

Rather than address Defendant's primary argument, in her Response (Doc. 21), Plaintiff has instead opted to generously quote case law on the "open and obvious" exception to premises liability, a theory that does not concern Defendant's knowledge of the dangerous condition but rather assesses Plaintiff's knowledge of the fuel spill to preclude Defendant's liability. (Doc. 21 at 9–21). In effect, Plaintiff has responded to an argument that Defendant has not made. Defendant's undisputed material facts—which Plaintiff does not contest, in pertinent part—indicate that Defendant does not seriously contend that the fuel spill was "open and obvious" or that Plaintiff was or should have been aware of the spilled fuel. (Doc. 19 at 3 ("6. Ms. Martinez did not observe any condition that needed attention. . . . She did not see or smell anything. . . and did not feel any liquid on her shoes before she fell.")); (Doc. 21 at 3 ("Ms. Martinez agrees with the claims and allegations set out in paragraph 6 of Defendant's Undisputed Material Fact No. 6.")). Defendant's argument on the present Motion does not hinge on Plaintiff's awareness of the spilled fuel; rather, the crux of Defendant's argument is its own lack of knowledge, an argument that Plaintiff has all but entirely failed to address in her Response.

Although Plaintiff has generally denied Defendant's lack of knowledge, she has put forward no evidence such that a jury could reasonably find otherwise. *See Lazy S Ranch*, 92 F.4th at 1198. This evidentiary threshold, described as simply "more than a mere scintilla" and "sufficient for a jury to reasonably find for the nonmovant," *id.*, is not an

7

exceedingly high bar. However, Plaintiff points to no evidence that, for example, any of Defendant's employees had actual knowledge of the spill prior to Plaintiff's accident, that the spill had persisted for such a time that an employee should have discovered the spill before then, or that Defendant's employees should have inspected the premises for spills and failed to do so. *See Kassick*, 490 P.2d at 253–54. Under certain circumstances, specific knowledge is unnecessary to establish Defendant's liability—for example, where there is evidence that spills occurred frequently on the premises, *see Glover v. Montgomery Ward & Co.*, 536 P.2d 401, 403, 408 (Okla. Civ. App. 1974) (finding a valid question for the jury in the absence of invitor's knowledge of the spill where testimony showed that children frequently spilled ice throughout the store),[1] or that employees of the invitor had created a

---

[1]   Plaintiff argues that Defendant "claims that the fuel lanes are periodically reviewed with a view toward looking for dangerous conditions. This leads a reasonable person to believe that leaks are a known occurrence that needed attention to prevent any dangerous condition." (Doc. 21 at 4). This is a similar contention to that which Plaintiff makes about keeping spill-remedying equipment on the premises in that both tend to show Defendant's general awareness of a potential, but not an actual, dangerous condition, and neither affect the likelihood of the dangerous condition occurring. Similarly, it does not follow that Defendant's regular inspection for fuel spills demonstrates Defendant's constructive notice—or liability notwithstanding—of any fuel that happens to be spilled. Quite the opposite, as constructive notice is generally shown through evidence of negligent inspection or a failure to inspect, not a policy of regular inspection. *See Kassick*, 1971 OK 131, ¶ 13, 490 P.2d at 253–54. In contrast, the Tenth Circuit has approved the use of an invitor's operating policies as evidence of negligence in that they tend to show "the measure of caution which ought to be exercised in situations to which the rules apply" as well as "what precautions are reasonable in light of the risk." *Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (quoting *Fulton v. St. Louis-San Francisco Ry. Co.*, 675 F.2d 1130, 1133 (10th Cir. 1982)). However, in the absence of evidence that Defendant actually violated its own policies, the policies themselves are not probative of Defendant's knowledge of the fuel spill that injured Plaintiff. *See Roberson*, 2022 WL 2874715 at *4–5 (approving for jury consideration evidence of spill inspection policy where evidence showed policy may not have been followed).

circumstance likely to result in such a spill. *See Lingerfelt*, 645 P.2d at 489 (finding shopkeeper liable where leaving piles of unwrapped strawberries heaped upon one another was likely to create the dangerous condition where plaintiff slipped on a loose strawberry in another part of the store). Plaintiff has submitted no such evidence in response to the present Motion, insisting only that Defendant's possession of spill-remedying equipment constitutes Defendant's notice of the spilled fuel. This contention lacks support in fact or in Oklahoma law, and, consequently, Plaintiff has failed to carry her burden to avoid summary judgment on her four claims premised on negligence and, consequently, her claim for punitive damages. *Rodebush By & Through Rodebush v. Okla. Nursing Home Homes Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993) ("The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages.").

Plaintiff has not made the necessary showing to defeat summary judgment. She has failed to identify—and this Court has been unable to find in the parties' submissions—any evidence to suggest that Defendant had notice of any spilled fuel as to invoke its duty to remedy or warn of the dangerous condition to which Plaintiff attributes her injuries. In the absence of evidence that Defendant breached its duty, Defendant cannot be liable to Plaintiff under any of her theories of negligence, and absent her negligence claims, Plaintiff's claim for punitive damages also fails.

### IV.    Conclusion

In order to demonstrate a genuine dispute as to the issue of Defendant's knowledge of the spill, Plaintiff was required to submit at least some evidence tending to show that

Defendant had actual prior knowledge of the dangerous fuel spill, that Defendant failed to reasonably inspect for the spill, or that Defendant created an unreasonable risk that made the spill likely to occur. Such evidence is wholly absent from the record. Based on the above analysis, the Motion for Summary Judgment is **granted**.

IT IS SO ORDERED this 11th day of July, 2025.

_Christine D. Little_
Christine D. Little
United States Magistrate Judge